**IN THE UNITED STATES OF DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| QUINCY JAMES GORDON, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 4:22-CV-00092 |
| HYATT CORPORATION et al., | § | |
| *Defendants* | § | |

**PLAINTIFF'S FED. R. CIV. P. 37(e) MOTION**

TO THE HONORABLE YVONNE Y. HO:

COMES NOW, Plaintiff **QUINCY JAMES GORDON** ("Gordon"), and files this Fed. R. Civ. P. 37(e) Motion. Accordingly, Plaintiff would show:

## I.     SUMMARY OF ARGUMENT

1. Defendants incurred in spoliation of evidence. They failed to preserve the hotel's surveillance video footage that would have corroborated Gordon's version of events. They also failed to preserve text messages that Defendant Noor Hasan ("Hasan") had with a coworker concerning what happened to Gordon's belongings, even after she was asked to do so. Gordon now seeks Fed. R. Civ. P. 37(e) relief and requests a jury instruction and the denial of summary-judgment motions.

## II.     RELEVANT BACKGROUND

### A.     ALTHOUGH LIU FALSELY TESTIFIED OTHERWISE, POLICE BODYCAM VIDEO FOOTAGE SHOWS THEM ASKING HER TO PRESERVE A COPY OF THE HOTEL'S SURVEILLANCE VIDEOS

2. On May 20, 2020, during Gordon's hotel stay, there was an incident at the hotel that necessitated police attention. At her deposition, Defendant Wendy Liu ("Liu") testified that the police never requested the videos. Ex. 3, Pg. 149:17-18. This was false. Body camera video footage from HPD conclusively shows otherwise, and in at least three (3) ways. First, Sergeant

1

Stuart Red literally asked Liu if she had cameras, and she answered that the Defendants had cameras everywhere. Doc. 168/169 Ex. 5 (20:30-20:42), Ex 6 (18:18-18:34), Ex. 7 (15:53-17:07); Ex. 5, Pg. 61:9-11, 92:4-9. To be exact, there were forty-two cameras on site that day. Ex. 3, Pg. 90:4-5. Second, Liu is literally on video with Hasan personally pulling-up videos on their laptops for the police. Doc. 168/169 Ex. 6 (21:17-21:20, 26:12-26:30, 27:35-27:46), Ex. 7 (24:47-25:00); Ex. 2, Pg. 137:4-15. Third, Officer Gary Tyneway asked Liu for a copy of the videos, and she responded she would, but only with a warrant. Doc. 168/169, Ex. 6 (53:22-53:30). With those requests, IH WL Acquisition Manager, LLC's ("Aimbridge") SOP required Liu to "*contact the Risk Management Team for further guidance*." Ex. 16, Pg. 12. Additionally, it also required that "*all applicable CCTV video/photos of the incident… be collected*." Ex. 16, Pg. 1. There is no evidence that Defendants preserved this surveillance video evidence.

### B.     DEFENDANTS ALSO KNEW IN THE AFTERNOON OF MAY 21, 2020, THAT THE HOTEL'S VIDEOS SHOULD BE PRESERVED

3.     The next day, at 4:51 PM, Liu wrote an email to the Defendants. Ex. 8, Pg. 157:19-158-1. From her "wendy.liu@hyatt.com" email address, she sent an email filled with falsehoods, which read:

> "**Hi everyone**, [**Gordon**] **was** arrested because he was **running a prostitution ring at our hotel** along with [four] other female guests who police believe… [were] involved with a nearby robbery… **Our camera** footage **shows** Mr. **Gordon driving in the same car as the female guests**…. He then left his room, ran to the front desk and asked us for help… I… had to give compensation to my in house guests who were disturbed by this… **The $1,000 disturbance [fee] is to cover the damages done to the property**… **It will include compensation we had to provide to other guests**… **Unless directed by Hyatt corporate**, as GM of this hotel, **I stand by the charges**."
>
> *See* Ex. 15, Pg. 3 (05/21/2020 16:51:30).

To clarify, almost everything in this email can be shown as false.[1] As summary, first, Gordon had not been running a prostitution ring, nor was he a prostitute. Second, the hotel's surveillance video could also show what Liu claimed since Gordon had not been driving in the same car as the female guests. Third, the $1,000 disturbance fee supposedly imposed on Gordon was not to cover any damages to the property. Fourth, the $1,000 cash-only fee was not to compensate guests either. These four things are addressed and evidenced in Gordon's other pending pleadings. In any case, the fact Liu sent this email should have put her and the other Defendants' on notice of the need to preserve said videos.

4. When confronted with that email specifically, Liu refused to state why she did not preserve the referenced video. Ex. 36, Pg. 5-6 # 21. To be exact, Gordon asked:

> Interrogatory #21: If, as you wrote, the hotel's camera footage showed Mr. Gordon driving in the same car as the female guests into the garage while being followed by police, as you claimed to your employer in writing, then why did you not preserve that video or any other videos related to the incidents made the basis of this lawsuit?"
>
> *See* Ex. 36, Pg. 5-6 # 21.

Moreover, Gordon also explicitly asked Aimbridge the following:

> Interrogatory #23: As it appears that Defendant Wendy Liu has put you on notice that a guest was allegedly "arrested for running a prostitution ring at [your] hotel" and that there is "camera footage show[ing] Mr. Gordon driving the same car as the female guests into the garage while being followed by police," why did you not save or preserve those videos?
>
> *See* Ex. 37, Pg. 15 # 23.

Liu and Aimbridge, however, wholly refused to respond to these interrogatories substantively.[2] Ex. 36, Pg. 5-6 # 21; Ex. 37, Pg. 15 # 23. Presumably, because the answer will clearly reveal bad

---

[1] Gordon does this in his response to Defendants' motions for summary judgment.

[2] Nor can they answer it now. Fed. R. Civ. P. 37(c)(1) (noting that if a witness fails to supplement a response, they cannot use that information in response to a motion).

faith.  Moreover, Defendants also totally failed to object to Gordon's requests for production seeking these document retention policies and refused to produce any.  Ex. 40, Pg. 7 #73-74.

5. That said, there is conflicting testimony on how long these videos are kept. According to Hasan, the Defendants had just gotten a new security footage, meaning that, if anything, they should have still had the footage.  Doc. 168/169 Ex. 11, Pg. 51:3-4.  Moreover, Hasan believes that the videos system the Defendants have can "*keep them permanently*."  Doc. 168/169 Ex. 11, Pg. 50:15.  Nothing in Aimbridge's interrogatory responses indicate that such is not the case.  Ex. 37, Pg. 13, # 20.  But, at Aimbridge's corporate representative's deposition, he testified that their DVRs will store videos for six (6) months.  Ex. 7, Pg. 148:11-13.  Whether permanently on the high end or six months on the low end, the Defendants knew these videos needed to be preserved.  *Infra*.

      **C.**      **POLICE REQUESTED VIDEOS THE NEXT DAY AS WELL**

6. Later that night, police again were called to the hotel.  Gordon had called them and Hyatt's 1-800 help line because Defendants "*refused to give him his items back*," and because he wanted "*a refund or to be allowed to stay for the two nights he paid*."  Ex. 15, Pg. 3 (05/21/2020 19:57:33).  Gordon met with Officer Hamid, got on his knees and begged:  "*I called the police*." 168/169 Ex. 9 (4:25 to 4:35); Ex. 1, Pg. 148:8-13, 151:23-24. Gordon added: "*Look, I'm on my knees begging you as a man*."  168/169 Ex. 9 (4:41 to 4:50); Ex. 2, Pg. 209:17.  "***You can… see it on camera… please help me***."  Doc. 168/169 Ex. 9 (7:10 to 7:34).  Gordon cried.  Ex. 2, Pg. 210:13:24.  "*We'll figure it out*," Hamid assured Gordon.  Doc. 168/169 Ex. 9 (13:05-13:06).

7. So, Hamid went back to Hasan, and asked: *Do you have anything on video*."  Doc. 168/169 Ex. 9 (14:57-14:58).  With that request, as was the case with Liu the day before, Aimbridge's SOP required Hasan to "*contact the Risk Management Team for further guidance*."

4

Ex. 16, Pg. 12. Additionally, it had also required that "*all applicable CCTV video/photos of the incident… be collected.*" Ex. 16, Pg. 1. Hasan did contact Aimbridge. To be exact, Hasan filed a written report. Ex. 18. The form for that report required Hasan to put Aimbridge on notice of the existence of "*security cameras*" as "*witnesses*." Ex. 18, DEF 000246.

        **D.**       **AN AIMBRIDGE CORPORATE REPRESENTATIVE THEN VISITS**

        8.       Following the events of May 20 and 21, an Aimbridge corporate representative showed up to the hotel to investigate. Doc. 168/169, Pg. 33:12-19. During that investigation, Aimbridge reviewed the surveillance videos. Ex. 7, Pg. 147:3-12. Pursuant to Aimbridge's own SOP, during his visit, he should have had *all applicable CCTV video/photos of the incident… be collected.*" Ex. 16, Pg. 1. In other words, Defendants failures keep piling up.

        **E.**       **SUBPOENAS ARE ISSUED AND THEN REFUSED**

        9.       For the events of May 21, 2020 at Hasan's insistence, Gordon was charged with making a terroristic threat. The fact that Gordon did not make such a terroristic threat, and that Hasan had instigated a false arrest or imprisonment is heavily evidenced in Gordon's other pending pleadings. In any case, on June 22, 2020, Gordon's criminal attorney applied for subpoenas for the videos. Ex. 21, 22. Said subpoenas were issued. Ex. 23, 24. Then, said subpoenas for the videos were served on June 25, 2020 and July 16, 2020. Ex. 25, 26.

        10.      The ***only*** reason why such subpoenas would not be forwarded to Defendants' risk or legal department was if the regional lead said not to do so. Ex. 7, Pg. 150:6-13. In other words, Defendants had been served with these subpoenas either a month or two months from the dates of incidents, which is well within the six (6) months that Aimbridge's corporate representative testified that the DVR saves the videos. Ex. 7, Pg. 148:11-13. In any case, the subpoenas were refused, and the criminal case was dismissed. Ex. 27.

### F. HASAN WAS PUT ON NOTICE TO PRESERVE TEXT MESSAGES

11. In January 2022, six days after she was served with this lawsuit, Hasan was put on notice to "save" her "text messages." Doc. 168/169, Pg. 3:23-4:1, 69:2-14. Hasan had been "texting" with "a coworker" who had been telling her "what happened to [Gordon's] stuff." Doc. 168/169, Pg. 9:5-10. Moreover, these text messages included details about Liu potentially having been fired for stealing cash from Hyatt. Doc. 168/169 Ex. 11, Pg. 15:20-16:12. And, they speak of "security camera" videos of Liu doing so. Doc. 168/169 Ex. 11, Pg. 16:15-19. Given this, Gordon later formally requested these, and they were not produced. Ex. 39, Pg. 6 # 19, 8 # 29.

### G. THE HONORABLE COURT'S ORDER, DATED JUNE 11, 2024

12. On June 11, 2024, the Honorable Court issued an order. Doc. 154. In it, the Honorable Court noted the hotel's "videotape[s were] no longer available," that Gordon had "raised spoilation allegations," and that those "allegations would be resolved at a later juncture." Doc. 154, Pg. 6 fn 1. Moreover, the Honorable Court also ruled as follows:

> "Defendant Hasan has stated that she communicated via text message with a co-worker (Gisselle Griffin) about this incident after this suit was filed. Hasan's counsel is ORDERED to obtain and review Hasan's devise—imaging it, if necessary—and produce the referenced text message(s) by searching between January 13, 2022 and January 31, 2022. If the message is not on Hasan's device, counsel must obtain and search for it on the device's cloud backup. Absent a showing of good cause, production of Hasan's text message must be completed by July 1, 2024." Doc. 154, Pg. 9 ¶ 1.

After this order was issued, Defendants hired a digital forensic examiner who attempted to retrieve said text messages but was unable to do so. Now, Plaintiff seeks to have the spoilation allegations resolved and particularly seeks Fed. R. Civ. P. 37(e) relief.

### III.  STATEMENT OF ISSUE

13. Is Gordon entitled to Fed. R. Civ. P. 37(e) relief? (Yes).

## IV. RELEVANT LEGAL STANDARD

14. This Court has previously stressed that a spoliator should not permitted to profit from a destruction. *BridgeTower Opco LLC v. Workforce Rsch. Grp. LLC*, 2023 U.S. Dist. LEXIS 10768 *12 (S.D. Tex. 2023) (Ho, Yvonne). A court like this one does justice by funding truth. *TLS Mgmt. & Mktg. Servs., LLC v. Mardis Fin. Servs.*, 2018 U.S. Dist. LEXIS 13784 *1 (S.D. Miss. 2018). That search requires evidence. *Id*. Destroying evidence, then, is more than a devious litigation strategy. *Id*. It is a lethal attack on a court's purpose and must be responded to in kind. *Id*. That said, Fed. R. Civ. P. 37(e) supplies the standard for the lost electronically stored hotel surveillance footage that was on Liu's laptop. From it, the four (4) predicate elements are that a party was (1) obligated to preserve the ESI, (2) but did not do so, (3) because they failed to take reasonable steps to preserve it, and (4) the ESI cannot be restored or replaced. *Balancecxi, Inc. v. Int'l Consulting*, 2020 U.S. Dist. LEXIS 219993 *35 (W.D. Tex. 2020).

15. The obligation comes into being when there is notice that the evidence needs to be preserved. *Falkins v. Goings*, 2022 U.S. Dist. LEXIS 218205 *10 (E.D. Lou. 2022); *see also* Doc. 52, Pg. 15 ¶ 36 (citing *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010) and conceding that that is the law). Moreover, "bad faith is determined by the when and how" the "data" was lost. *TLS Mgmt.*, *6. Finally, Fed. R. Civ. P. 37(e)(1) does not place the burden of proving or disproving prejudice on one party or the other; instead, the rule leaves judges with discretion to determine how best to assess prejudice in particular cases." *Estate of Esquivel v. Brownsville Indep. Sch. Dist.*, 2018 U.S. Dist. LEXIS 219332 *12 (S.D. Tex. 2018) (noting that "the relevance and importance of the lost footage [was] undisputed" and that the "Plaintiffs [thus had] been prejudiced by the loss of the video").

## V.     ARGUMENT

### A.     THE DEFENDANTS SHOULD NOT BENEFIT OR PROFIT FROM THE SPOLIATION OF THE HOTEL'S SURVEILLANCE VIDEOS

16.     The Defendants' obligation to preserve the hotel's surveillance videos came into existence as soon as police told the Defendants that they needed the videos. *Supra*. To that, the Defendants responded that a legal process would be required to obtain such copies of the videos. *Supra*. At the very latest, it came into being when the subpoenas for the videos were served. *Supra*. That said, bad faith is determined by when and how the data was lost. The hotels' surveillance videos appear to have been lost when the Defendants refused to comply with the subpoena, and Gordon's case was dismissed. *Supra*. Before then, the Defendants' own SOP necessitated that they preserve the videos. *Supra*. Several internal emails and reports have put them on notice of the necessity of safeguarding said videos. *Supra*. Finally, according to the Defendants' corporate representative, the videos should have still been on the DVR when the subpoenas were served. *Supra*. A jury, therefore, could find bad faith. Finally, Gordon is prejudiced by the loss of these videos as they would have corroborated his version of events.

### B.     THE DEFENDANTS SHOULD NOT PROFIT FROM HASAN DESTRUCTION OF TEXT MESSAGES

17.     Hasan's preservation obligation came into existence when she was explicitly told to preserve her text messages with another former employee, Giselle Griffith, and that there would be a subsequent formal request. Hasan, however, failed to preserve the evidence that was electronically stored. Hasan knew of the need to preserve them but did not do so is bad faith. Consequently, Gordon is prejudiced because those text messages would have revealed what happened to Gordon's converted personal belongings and the circumstances of Liu's separation

8

from Hyatt/Aimbridge. *Supra*. Such evidence would have been valuable in impugning the credibility of Defendants.

## VI.    RELIEF SOUGHT

18. Similarly situated courts allow the jury to decide whether the Defendants' evidence in bad faith. *See* <u>DeYoung v. Dillon Logistics, Inc.</u>, 2021 U.S. Dist. LEXIS 26947 * 9 (E.D. Tex. 2021); <u>Edwards v. 4JLJ, LLC</u>, 2018 U.S. Dist. LEXIS 99788 * 37 (S.D. Tex. 2018). Using such cases as an example, Gordon recommends the following proposed jury instructions:

> Ladies and gentlemen of the jury, if you find that the Defendants willingly withheld, destroyed, or failed to preserve evidence, specifically the hotel's video surveillance footage and text messages, you may infer that the Defendants did so because the evidence would have been damaging to its case.

In addition, Gordon seeks the denial of the Defendants' pending summary-judgment motions as a sanction. Doc. 166, 167. Similarly situated courts have also found that an appropriate remedy should come in the "**form of denial of summary judgment**." *Cleary v. Am. Airlines, Inc.*, 2022 U.S. Dist. LEXIS 184667 *22 (N.D. Tex. 2022) (finding the same); *Villalon v. Cameron Cty.*, 2017 U.S. Dist. LEXIS 222483 *15 (S.D. Tex. 2017) (finding that the loss of a video should preclude the Defendants "from filing a summary-judgment motion alleging Plaintiff's lack evidence to support their claim"). The rationale for such a remedy here would be that the hotel's surveillance videos would have entirely corroborated Gordon's version of events and also captured the Defendants' misdeeds on video. Moreover, the lost text messages have frustrated Gordon's ability to find out what happened to his things or why Liu and Hyatt/Aimbridge parted ways. Before Gordon's incident, employees have freely spoken negatively about Liu's "*racial… profil[ing]*" of guests who are too "*scared to speak up*" over the phone in conversations with

9

Hyatt.[3]  Ex. 10, DEF 000260.  Hence, the text messages could have contained the same and other information key to the summary-judgment dispute.  Thus, those motions should be denied, as sanctions.

## VII. PRAYER

**WHEREFORE**, Plaintiff requests that the Honorable Court <u>GRANT</u> the Motion.

Respectfully submitted,

**THE SHARIFF LAW FIRM**

By<u>: /s/ M. Obaid Shariff        </u>
    **M. Obaid Shariff**
    Federal I.D. No. 2827312
    Texas Bar No. 24091135
    2500 West Loop South, Ste 300
    Houston, Texas 77027
    eservice@sharifflawfirm.com
    **ATTORNEY FOR PLAINTIFF**

---

[3] Gordon did not have a chance to confront Liu about this at her deposition, since the Defendants resisted producing such until the Honorable Court ordered them to do so.  Doc. 154, Pg. 7.  Even at that, the Defendants kept all the names and contact information redacted even though the Honorable previously found some guest names/contact information was discoverable.  *Id*.

**IN THE UNITED STATES OF DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| QUINCY JAMES GORDON, | § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 4:22-CV-00092 |
| HYATT CORPORATION, D/B/A HYATT HOUSE HOUSTON/GALLERIA, et al., | § § § | |
| *Defendants* | § | |

## **CERTIFICATE OF CONFERENCE**

TO:    Clerk of the Court

     I certify that we conferred with the Defendants regarding the subject matter of this motion, and they indicated they were opposed.

                                                                                       M. Obaid Shariff

# IN THE UNITED STATES OF DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

QUINCY JAMES GORDON, §
§
  *Plaintiff*, §
§
v. § CIVIL ACTION NO.
§ 4:22-CV-00092
HYATT CORPORATION, D/B/A HYATT §
HOUSE HOUSTON/GALLERIA, et al., §
§
  *Defendants*. § **CERTIFICATE OF SERVICE**

-----------------------------------------------------------------X

TO: Clerk of the Court

I hereby certify that on the date of this filing, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and/or via email to the following:

**MAYER LLP**
Zach T. Mayer
zmayer@mayerllp.com
Virginia M. Pederson
vpederson@mayerllp.com
750 North St. Paul, Suite 700
Dallas, Texas 75201
**Attorneys for Hyatt House Franchising, L.L.C., SRE 4610 TX OPCO GP Pledgor, LLC, IH WL Acquisition Manager, LLC, Houston H. Galleria OPCO, LP, and Wendy Liu**

**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
Sean R. Hicks
David A. McFarland 9
Thompson, Coe, Cousins & Irons, L.L.P.
Plaza of the Americas 700 North Pearl Street, 25th Floor
Dallas, Texas 75201

**Attorneys for Defendant Noor Hassan**

By: _____
M. Obaid Shariff
**Attorney for Plaintiff**